[No. 12787.   In Bank. — November 29, 1890.]

CLARA S. FOLTZ, Respondent, *v.* HENRY D. COGSWELL, Appellant.

ATTORNEY AT LAW — ASSUMPSIT FOR SERVICES — PLEADING — CONSTRUCTION OF COMPLAINT — IMPLIED CONTRACT — QUANTUM MERUIT — EVIDENCE. — A complaint in an action to recover for services rendered as an attor-ney at law, which alleges that the defendant promised to fully pay the plaintiff for her professional services, "to wit, the sum of five thousand dollars," and further alleges the performance of certain specified services, and "that all of the services rendered to defendant were, and are, rea-sonably worth five thousand dollars," counts upon an implied and not upon an express contract, and evidence is admissible under it to show the reasonable value of the services.

ID. — EFFORTS TO SECURE PASSAGE OF LEGISLATIVE ACT — LOBBYING — CONSTRUCTION OF CONSTITUTION. — Services rendered by an attorney in

endeavoring to persuade the members of the legislature individually to act favorably upon a bill for the interest of a client, under a contract for compensation not contingent upon success, in which no dishonest, secret, or unfair means were used, do not constitute "lobbying" within the meaning of article 4, section 35, of the constitution, and are not contrary to public policy.

ID. — ATTORNEY'S USE OF JUDGMENT— PROCURING INEFFECTUAL LEGISLATION. — Where the evidence shows that the legislation procured through the assistance of the plaintiff was designed to enable the defendant to obtain from the regents of the University of California a reconveyance of certain real property donated to them; that the plaintiff prepared for and submitted to the regents written arguments in relation to the property, and had made preparation and was ready to commence and prosecute an action against the regents to compel a reconveyance, — the fact that plaintiff acted, as an attorney, upon her own judgment as to what course to pursue to regain the property, and that the legislation procured turned out to be ineffectual, will not bar a recovery for the value of the services rendered, though the ineffectiveness of the legislation may be considered in estimating their value.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Garber, Boalt & Bishop*, and *W. C. & Isaac Burnett*, for Appellant.

The special agreement attempted to be proved by respondent, whereby plaintiff was to receive five thousand dollars, or to be well paid, in the event of her success in "passing the bill," being an agreement for compensation contingent upon success, was void as against public policy, and no action can be maintained thereon. (*Marshall* v. *Baltimore etc. R. R. Co.*, 16 How. 314; *Tool Co.* v. *Norris*, 2 Wall. 54, 55; *Wood* v. *McCann*, 6 Dana, 366; *Clippinger* v. *Hepbaugh*, 5 Watts & S. 315; *Weed* v. *Black*, 2 McAr. 268–274; *Gil* v. *Williams*, 12 La. Ann. 219.) No action can be maintained on the special agreement relied on and attempted to be proved by respondent, or for the value of the services rendered thereunder, because such services consisted wholly of personal solicita-

tion of individual members of the legislature, or of argumentation addressed to individual members privately, and not of arguments or presentation of reasoning or authority to the legislature, or to any committee thereof as a body, or when in session. (*Cary* v. *Western Union Tel. Co.*, 47 Hun, 610; *Sedgwick* v. *Stanton*, 14 N. Y. 289; *Lyon* v. *Mitchell*, 36 N. Y. 235; 93 Am. Dec. 502; *Mills* v. *Mills*, 40 N. Y. 543; 100 Am. Dec. 535; *Bryan* v. *Reynolds*, 5 Wis. 200; 68 Am. Dec. 55; *Powers* v. *Skinner*, 34 Vt. 274; 80 Am. Dec. 677; *Marshall* v.· *Baltimore etc. R. R. Co.*, 16 How. 314; *Tool Co.* v. *Norris*, 2 Wall. 54; *Wood* v. *McCann*, 6 Dana, 366; *Clippinger* v. *Hepbauyh*, 5 Watts & S. 315; 40 Am. Dec. 519; *Weed* v. *Black*, 2 McAr. 268; *Gil* v. *Williams*, 12 La. Ann. 219.) But even if respondent had, subsequent to the alleged second agreement, rendered legitimate services, — that is, in preparing arguments, or making them before committees, or in rendering other services recognized as legitimate, — yet her services in personally soliciting individual members were so blended with such legitimate services that no recovery can be had even for the latter. (*McBratney* v. *Chandler*, 22 Kan. 692; 31 Am. Rep. 213; *Cary* v. *Western Union Tel. Co.*, 47 Hun, 610; *Rose* v. *Truax*, 31 Barb. 361, 376, and cases *supra*.) There can be no recovery as upon a *quantum meruit*, for the reason that the resort to the legislature and the procurement of legislation were had on respondent's own motion, and on her judgment, as an attorney and counselor, as to what was necessary and what was the proper course to be pursued in order to obtain the reconveyance to appellant of his property; and it having turned out that the legislation procured was utterly ineffectual, and that appellant was in the same position after it had been procured as he was before, the services are thereby conclusively shown to have been worthless, and therefore no ground appears for a recovery upon a *quantum meruit*. (See 2 Addison on Con-

tracts, sec. 876, and cases cited; *Bridges* v. *Paige*, 13 Cal.
640; *Timberlake* v. *Crosly*, 81 Me. 249.)

*J. C. Bates*, for Respondent.

There is no doubt that the subject-matter of such a
contract as set forth in the complaint is perfectly legal
and proper. (*Trist* v. *Child*, 21 Wall. 450; *Stanton* v.
*Emery*, 93 U. S. 557; Wharton on Contracts, sec. 402;
*Sedgwick* v. *Stanton*, 14 N. Y. 293.)

Works, J. — This cause was submitted in Department
Two, and the following opinion prepared by Gibson, C.: —

"*Assumpsit* to recover for services rendered as an attor-
ney and counselor at law.

"Plaintiff alleges, in her complaint, that, between the
twenty-seventh day of January, 1883, and the ninth day
of March, 1883, at the special instance and request of
defendant, who promised to fully pay her for her profes-
sional services, 'to wit, the sum of five thousand dollars,'
she devoted her entire time and skill as a lawyer in the
preparation of an act entitled ' An act authorizing and
empowering the regents of the University of California
to convey certain lands,' designed to enable the defend-
ant to obtain from said regents a reconveyance of certain
real property in San Francisco that he had donated to
the university, and in making the legislature acquainted
with her bill, and in making arguments before the va-
rious committees of that body, in order that the justice
and merits of defendant's demand for the passage of the
bill might be fully understood, all of which services re-
sulted in the passage of the bill into a law, entitled as
above, on the ninth day of March, 1883; that between
the latter date and March 17, 1885, she counseled with
and advised defendant as to various legal questions con-
cerning the property, and prepared for and submitted to
the regents of the university written arguments in rela-
tion to the same property; that on the date last men-

tioned defendant gave her notice that her services were no longer desired; that all of the said services rendered to defendant were and are reasonably worth five thousand dollars, no part of which has been paid.

"Defendant in his answer denies any agreement for any sum greater than two hundred dollars for her professional services; and avers that on December 12, 1882, plaintiff contracted with defendant to perform all the services mentioned in the complaint, and, in addition, to conduct and prosecute a suit then intended to be commenced against the regents of the university to recover the property referred to in the complaint, through the trial and appellate courts, for the sum of two hundred dollars; that all the services ever performed by plaintiff were pursuant to her own judgment as a lawyer, and in accordance with said agreement; and as a further defense, that, long before the present action was commenced, defendant paid plaintiff in full for all services performed by her for him.

"The jury, upon the issues thus presented, rendered a verdict for plaintiff for $1,450. From the judgment entered thereon, and an order refusing a new trial, defendant appeals.

"The appellant asserts that the claim of plaintiff is based upon an express contract for the sum demanded for her services, and that it was error to admit evidence in support of a demand upon a *quantum meruit.* The complaint, it is true, states in one place that she was to be fully paid for her services, to wit, five thousand dollars; but, reading the complaint as a whole, the substance of which we have set out above, we think it clearly shows that the action is upon an implied contract for the reasonable value of her services, alleged to be reasonably worth the sum demanded, and not upon an express contract for that sum. This contruction was properly given to it by the trial court, and the evidence in support of it was admissible.

"Appellant in his answer does not deny that the services for which respondent seeks to recover were rendered substantially as alleged, but avers that they were rendered pursuant to an express contract, by the terms of which she was to receive and did receive two hundred dollars, and that all services rendered by her were fully paid for.

"The contract referred to was, in effect, as above set forth in the substance of defendant's answer. But after visiting Sacramento, where the legislature was then in session, the respondent testifies that she found that she could not spend the time necessary to procure the passage of the act desired by the defendant, and upon returning to San Francisco and informing him of that fact, he urged her to return to Sacramento and remain until the act was passed, believing that she could accomplish it, and agreed to pay her well for her services. She said they would be worth five thousand dollars; he did not assent to this amount, but assured her that she would be fully compensated. There is sufficient testimony in the record, aside from that of the plaintiff's, strongly tending to establish this agreement, and to show that it took the place of the original written contract.

"It is admitted, in the answer, that plaintiff, between the 27th of January, 1883, and the 9th of March, 1883, 'devoted *some time* and her professional skill, ability, and learning' in acquainting the legislature and its committees with the merits of the act that defendant desired, which resulted in the passage of the act on the date last mentioned, and that since the date last referred to, at divers times and occasions, and prior to September 14, 1883, after which date defendant refused to accept any further services from her, she counseled with and advised defendant in relation to the property he was seeking to regain from the regents of the university, and prepared written arguments concerning the same prop-

erty, and sent the same before the said regents, but denies that the latter were sent before said regents until April 10, 1884, about seven months after defendant had refused to accept any further professional services from her.

"There is testimony tending to prove that she prepared the bill, which afterward became a law, and made arguments in support of it, and caused it to be introduced in both departments of the legislature, appeared and argued the measure before at least one committee of that body, and also before the governor when the bill reached his hands for consideration; and further, that the written arguments she sent before the regents of the university after the passage of the act were sent before she was informed by defendant that he no longer required her professional services; and according to her own testimony and that of another witness, the services she so rendered were of a greater value than the amount awarded by the jury. The only expert witness called for defendant on this point placed the value as high as one thousand dollars.

"Therefore we do not feel justified in disturbing the verdict, unless, as claimed by defendant, the agreement relied upon by plaintiff was an agreement for compensation contingent upon success, and consequently void as against public policy.

"A sufficient answer to this objection is, that a careful review of the testimony fails to show, nor can it be fairly inferred therefrom, that plaintiff's compensation depended solely upon her success in obtaining the passage of the act. She, it is true, insisted in her testimony that she was to and should receive five thousand dollars for her services, and when the act became a law, she demanded that amount, but there is not a word indicating that, in the event of her failure to secure the passage of the act, she should receive nothing for her services; consequently, we cannot say that she was to be compensated only in the event of success.

"It is further contended by defendant that a portion of her services in connection with the passage of the act consisted, not of arguments addressed to the legislature or any committee thereof when in open session, but of personal solicitation of individual members of the legislature, which is contrary to public policy, and that such illegitimate services were so blended with what may have been legitimate as to taint the whole and prevent a recovery.

"In *Miles* v. *Thorne,* 38 Cal. 335, 99 Am. Dec. 384, an action to enforce a trust that arose upon an agreement by which Thorne and Miles agreed that if a franchise for a toll-road could be obtained from the legislature in Thorne's name, for which Miles should draw a bill, that upon the passage thereof each would construct one half of the road, and be equal owners thereof, and divide the tolls between them, the court said: 'We find nothing in the contract, as alleged in the complaint, which sustains the point made by the defendant, that it is against public policy, and therefore illegal and void. The point is founded upon the idea that by the agreement the plaintiff was to use his influence to obtain from the legislature a grant of the franchise in question. The complaint furnishes no ground for such a charge. The plaintiff was to draught a bill for the franchise and place it in the hands of some member of the legislature, to be by him introduced to that body; but there was no promise or undertaking on his part to labor, either secretly or openly, with the members of the legislature to secure its passage. Yet, having by virtue of the agreement, an equal interest with the defendant in obtaining the franchise, he had a legal right, equally with him, to urge its passage by all honorable means, provided he did not conceal, but openly acknowledged, his interest in the measure. Even had he agreed to act as the advocate of the defendant, the agreement would not have been illegal, if it was understood that he was to act openly as such, and did so act when

the time came'; citing *Marshall* v. *Baltimore etc. R. R. Co.*, 16 How. 334. In the latter case, the court draws a distinction between the use of personal, or any secret or sinister, influence upon legislators, by one who seeks the passage of an act which it holds to be contrary to public policy, and the open advocacy of the same before the legislature or any committee thereof in open session. Article 4, section 35, of our constitution defines lobbying as follows: 'Any person who seeks to influence the vote of a member of the legislature by bribery, promise of reward, intimidation, or any other dishonest means, shall be guilty of lobbying, which is declared a felony.'

"Now, while the evidence does show that the plaintiff endeavored to persuade some of the members of the legislature individually to act favorably upon the bill she was seeking to have passed, it does not show that she used any dishonest, secret, or unfair means to accomplish her object. Besides, if she did not tell them that she was acting as an agent for pay, they must have known from the character of the bill that she was acting as the agent of Dr. Cogswell, which fact was sufficient, of itself, to disclose her motive. Hence this contention cannot be sustained.

"It is further urged that as plaintiff acted upon her own judgment as to what course to pursue to regain the property for defendant, and the legislation procured having turned out to be ineffectual, her services in procuring·it were consequently worthless, and she cannot recover upon a *quantum meruit.*

"In support of this position, *Timberlake* v. *Crosby*, 81 Me. 249, and *Bridges* v. *Paige*, 13 Cal. 640, are cited. In the first case, which was to recover a balance due for professional services, it was held that the unnecessary services rendered by the attorney could not be recovered for, and that his failure to expend the few minutes necessary in the examination of the revised statutes and digest, the former of which contained a reference to and

the latter the substance of a case which would have shown him the futility of the additional course he pursued, amounted to negligence. This is in accordance with the rule stated in Weeks on Attorneys at Law, sec. 335. In *Bridges* v. *Paige*, 13 Cal. 640, an action on a *quantum meruit* to recover for services rendered as an attorney in a suit in which the attorney was successful, evidence offered by the defendant which tended to show negligence and want of skill in the conduct of the case was excluded. This was held to be erroneous, because a trial might result successfully, and yet the attorney, by his negligence or want of skill in conducting the case, might put his client to great expense to redeem his blunder, and evidence of such negligence or want of skill should be received to reduce the value of his services.

"Neither of those cases, it is to be noticed, goes to the extent of holding that, where services rendered are made up in part of those which were proper and those which were negligently or unskillfully rendered, no recovery can be had for the former.

"In the case at bar, the evidence to the effect that the legislation procured through the assistance of plaintiff was useless must therefore have been considered by the jury in estimating the value of her services, which not only consisted, as we have seen, of the legislation she obtained, but of arguments prepared and submitted by her to the regents of the university, designed to accomplish the object the defendant desired to attain. She also had made preparations and was ready to commence and prosecute an action against the said regents to compel a reconveyance of the property when she was discharged by the defendant.

"This being so, then, in the absence of any showing that the amount awarded by the jury is excessive, the last exception must also be overruled."

. Subsequently the case was ordered into Bank, and the same has been orally argued and resubmitted.

Having given the case this further consideration, we are satisfied with the opinion of the learned commis-. sioner and the conclusion reached therein.

Judgment affirmed.

SHARPSTEIN, J., FOX, J., PATERSON, J., and McFAR-LAND, J., concurred.