[Civ. No. 3629. First Appellate District, Division One.—December 22, 1920.]

## W. H. SCHWEPPE, Appellant, v. H. SANDBERG, Respondent.

[1] CONTRACT — APPEARANCE BEFORE STATE HIGHWAY COMMISSION — PRESENTATION OF MERITS OF PROPOSED ROUTE—VALIDITY OF AGREEMENT BETWEEN PROPERTY OWNER AND REPRESENTATIVE.—A contract of a property owner employing an individual to represent him before the State Highway Commission in relation to the location of a certain route for the highway which, if adopted, would bring the highway to or through the lands of such owner is not against public policy, where the means employed in the fulfillment of the contract were perfectly legitimate in the eyes of the law.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

Kemp, Mitchell & Silberberg and Alex W. Davis for Appellant.

Cunningham & Hays for Respondent.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendant after an order sustaining his demurrer to the plaintiff's complaint.

The action was one brought to recover the sum of two thousand five hundred dollars alleged to be due from the defendant to the plaintiff for certain services rendered in representing the defendant before the California State Highway Commission in relation to the location of a cer-

tain route for the state highway which, if adopted, would
bring said highway to or through the lands of the de-
fendant, and also for procuring for the defendant a loan
of three thousand dollars, to be secured by a mortgage
upon said lands, the amount to be paid for said services
to become payable upon the procurement of said loan and
upon the construction of the said highway along said
proposed route to or through any portion of the defend-
ant's land. The complaint, in pleading the agreement for
the plaintiff's said employment, does not set forth in
terms the writing embodying the same, but pleads said
agreement in substance as follows: The plaintiff is alleged
to have ''agreed to perform certain services for and on
behalf of the defendant in representing the defendant
before the California State Highway Commission, and in
presenting to the State Highway Commission, as the repre-
sentative of the defendant, the merits of a route for the
location of the state highway which would bring the said
highway to or through the lands of the defendant above
described.'' The plaintiff also agreed to procure for the
defendant, within five days after said November 24, 1911,
a loan of three thousand dollars, to be secured by a mort-
gage on the land of defendant above described. That
the defendant, in consideration of said agreement by the
plaintiff and in consideration of services theretofore per-
formed by the plaintiff at the special instance and re-
quest of the defendant, in appearing before said State
Highway Commission as the representative of the defendant
in presenting the merits of said route, agreed to pay to
the said plaintiff the sum of two thousand five hundred
dollars upon the securing of said loan of three thousand
dollars within five days after said November 24, 1911,
and upon the construction of said state highway to or
through any part of the said property, as above described.
The complaint further proceeds to allege that the plain-
tiff duly performed all the conditions of said contract on
his part; that he secured the loan in question promptly;
that he appeared before the State Highway Commission
as the representative of the defendant, and presented to
the said State Highway Commission the merits of the route
for the location of the said state highway, which would
bring said highway to and through the property of the

defendant; that he procured and presented to the commission maps and profiles showing the location of said route, and the length of said route and the grades to be encountered; that said highway commission was informed that plaintiff appeared before it as the representative of a property owner along said proposed route and not on his own behalf; that the state highway was located on said route and was constructed through the property of the defendant on or about August 1, 1918. Then follow the allegations of the plaintiff's demand for payment and the refusal thereof by the defendant, and prayer for judgment for the amount alleged to be due.

The demurrer to said complaint was general, and was also special in one particular to be hereafter noted. The order sustaining the demurrer was general and was made without leave to amend. Judgment of dismissal of the action followed the entry of said order.

[1] The contention of the defendant upon the hearing of said demurrer was—and it is also made upon this appeal—that the contract which the plaintiff had pleaded in substance and effect was one against public policy, and was therefore void. The trial court evidently adopted this view in its order sustaining the defendant's demurrer and in its judgment of dismissal. We are totally unable to perceive that there is any basis whatever to be found in the body of the plaintiff's complaint for the conclusion thus arrived at by the trial court. That the owner of property lying within a region through which it is proposed to construct a public highway, the precise route of which has not yet been determined upon by the public officials who are charged with the duty of selecting the same, may not honestly and in good faith present before such officials facts and arguments with relation to the merits of a particular route which, if selected, will run to or through his property, no one will for a moment question, and it follows necessarily that what such property owner may in good faith do in person in that regard he may do through another, and he may for that purpose select an attorney or agent to act as his representative in presenting the merits of the particular location of said highway which he desires to have selected, and, hence, of course, he may agree to pay his attorney, agent, or repre-

sentative a stipulated regard for the performance of such services. There is nothing illegal or immoral or against public policy in such a transaction or service. It is not necessary to go afield in the search for authorities to sustain this view. In the case of *Bergin* v. *Frisbie*, 125 Cal. 168, [57 Pac. 784], an agreement much similar to that presented in the instant case was pleaded and proven, and the supreme court, in passing upon its validity, used the following language: "We have carefully scanned the face of this contract, and find nothing whatever to justify a judicial declaration that it is against good morals. There was no secrecy, no deception, no fraud, no corruption. It was an ordinary every-day contract. Thousands of similar import probably have been made and executed. . . . The means and method to be employed are the all-important factors in marking the validity or invalidity of the contract. We see no one of its provisions that stamps it void as against public policy and good morals; neither do we find anything in the evidence indicating any act done by the plaintiff that to any degree could be construed improper. The employment of persons to influence legislation or to influence decisions of the land department, or even the decisions of judicial tribunals, in a proper way, is not against sound public policy, and this, too, even though the compensation for the labor to be performed is contingent upon successful results. The means and methods to be used must be improper, or else such employment is perfectly legitimate in the eyes of the law."

An examination of the complaint before us shows that the means which the plaintiff was to employ in the performance of his stipulated service for the defendant were such as would serve to present to the State Highway Commission "the merits of a route for the location of the state highway which would bring the said highway through or to the land of the defendant." And the means which the plaintiff is alleged to have actually employed in the performance of his said agreement were those of appearing before the commission to urge the merits of said route, and of procuring and presenting to the commission maps and profiles showing the location of said route and the length of said route and the grades to be encountered. It thus affirmatively appears that the means which the plaintiff

was to employ, and which he actually did employ, in the fulfillment of his said agreement were such as were "perfectly legitimate in the eyes of the law."

The case of *Foltz* v. *Cogswell*, 86 Cal. 542, [25 Pac. 60], is also quite in point in its bearing upon the case at bar, as is also the case of *Miles* v. *Thorne*, 38 Cal. 335, [99 Am. Dec. 384], in both of which cases it is held that the appearance of a representative of an interested party before a public body to urge the adoption of a particular measure or policy is neither illegal nor improper when the means employed are open and have for their purpose the presentation of the merits of the advocated matter.

The case of *Fites* v. *Marsh*, 171 Cal. 488, [153 Pac. 927], has also its direct bearing upon the question before us since the supreme court therein declares that "it is the universal presumption of law that where a contract can be performed legally it will not be presumed that the parties intended to perform it in an illegal manner."

The cases from the courts of this state relied upon by the respondent herein have no application to the question before us, since they refer in each instance to the proposed performance of such illegal acts as the procurement of false witnesses or the presentation of evidence of nonexistent facts. Such contracts are, of course, illegal; but such is not the nature of the contract between the parties hereto so far as its contents are revealed in the complaint. The trial court was, therefore, in error in sustaining the defendant's general demurrer.

As to the special demurrer, the point made therein has no merit; but even if it were meritorious the plaintiff should have been permitted in that respect to amend his complaint.

The judgment is reversed, with directions to the trial court to overrule the defendant's demurrer and require him to further plead to the plaintiff's complaint.

Kerrigan, J., and Seawell, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1921.

All the Justices concurred.